**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| PLECTRUM LLC, | |
|     Plaintiffs, | Case No. 4:17-cv-00082-ALM |
|     v. | JURY TRIAL DEMANDED |
| FORTINET, INC., | |
|     Defendant. | |

## <u>DEFENDANT FORTINET INC.'S MOTION TO CHANGE VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA</u>

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   STATEMENT OF FACTS ......................................................................................2

    A.    Fortinet................................................................................................................2

    B.    Plectrum and Other Cases Filed by Plectrum ..........................................................4

    C.    Third-Parties ........................................................................................................5

III.  THE RELEVANT STANDARDS..........................................................................6

IV.   ARGUMENT ..........................................................................................................7

    A.    This Action Could Have Been Brought in the Northern District of
        California ..............................................................................................................7

    B.    The Private and Public Factors Weigh Heavily in Favor of Transfer to the
        Northern District of California................................................................................7

        1.    Relative Ease of Access to Sources of Proof ................................................7

        2.    Cost of Attendance for Willing Witnesses...................................................9

        3.    Availability of Compulsory Process to Secure the Attendance of
            Witnesses Weighs in Favor of Transfer.....................................................11

        4.    Local Interest in Adjudicating Local Disputes Weighs in Favor of
            Transfer ................................................................................................12

        5.    Other Practical Factors, such as Judicial Economy, Are Neutral .............13

        6.    Remaining Public Interest Factors ...........................................................15

V.    CONCLUSION......................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Adaptix, Inc. v. HTC Corp.*,
    937 F. Supp. 2d 867 (E.D. Tex. 2013) ................................................................. 10

*In re Apple, Inc.*,
    581 F. App'x 886 (Fed. Cir. 2014) ....................................................................... 13

*Blue Spike, LLC v. Texas Instruments, Inc.*,
    Nos. 6:12-cv-499 & -558, 2014 WL 1374045 (E.D. Tex. March 13, 2014) .................... 12, 15

*Chrimar Sys. v. Juniper Networks, Inc.*,
    Nos. 6:15-cv-618 & -630, 2016 WL 126936(E.D. Tex. Jan. 11, 2016) .................. 8, 10, 13, 15

*Evolutionary Intelligence, LLC v. Apple, Inc.*,
    No. 6:12-cv-783, 2013 WL 8360309 (E.D. Tex. Aug. 27, 2013)............................................. 13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)................................................................................... 7, 9

*In re Google Inc., Appeal*,
    No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) ..................................... 1, 9, 13, 14

*Kleiner v. Southwest Airlines Co.*,
    No. 5:08-cv-218, 2008 WL 4890590 (W.D. Tex. Nov. 4, 2008) ........................... 11

*Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*,
    No. 6:12-cv-164, 2013 WL 5496816 (E.D. Tex. Mar. 15, 2013)............................ 11

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
    425 F. Supp. 2d 325 (E.D.N.Y. 2006) .................................................................... 9

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
    No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .......................... 2, 12

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009).............................................................................. 6

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014).............................................................................. 13

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
    No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)................................. 7, 9, 10

*In re Toyota Motor Corp.*,
    747 F.3d 1338 (Fed. Cir. 2014).............................................................................. 6

*TracBeam, LLC v. Apple, Inc.*,
No. 6:14-cv-680, 2015 WL 5786449 (E.D. Tex. 2015) ........................................ 15

*U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*,
No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613 (E.D. Tex. Apr. 2, 2013) ............. 15

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .................................................................... 6, 7, 9

*Wacoh Co. v. Kionix Inc.*,
845 F. Supp. 2d 597 (D. Del. 2012) ..................................................................... 11

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
Nos. 2:10-cv-364, -365, -577, & -578, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............. 12

## <u>Statutory Authorities</u>

28 U.S.C. § 1400(b) ............................................................................................. 7

28 U.S.C. § 1404(a) .................................................................................. 1, 6, 7, 15

Defendant Fortinet, Inc. ("Fortinet") respectfully moves to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.   <u>INTRODUCTION</u>

The Northern District of California is Fortinet's home.  Fortinet's headquarters are in that District—in Sunnyvale, California.  Virtually all of Fortinet's United States employees devoted to engineering, finance, operations, manufacturing, and marketing work in Sunnyvale, California or nearby in Union City, California.  Indeed, the accused products in this case (certain FortiGate and FortiSwitch products) were designed and developed in the Northern District of California, and the accused FortiGate and FortiSwitch products destined for United States customers are (after being manufactured in Asia) tested and shipped from the Northern District of California. In addition, the vast majority of Fortinet's documents, including documents relating to the development and commercialization of the accused products and the source code that allegedly infringes the asserted patents, are stored on servers and computers in the Northern District of California.

In contrast, the only connection this case has to the Eastern District of Texas is that Plaintiff Plectrum LLC ("Plectrum") is allegedly (if questionably) based here, and has filed other suits against other defendants here in the Eastern District of Texas. But that alone does not merit keeping the case in this District.  As the Federal Circuit explained in *In re Google Inc.*, Appeal No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017), it "cannot be correct" that "the mere co-pendency of related suits in a particular district would automatically tip the balance in non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits."  Here, only two other lawsuit filed by Plectrum are still active—Plectrum's lawsuits against AT&T Inc. *et al*. ("AT&T"), Case No. 4:17-cv-00123-ALM ("the *AT&T* case") and Comcast Corp. *et al*. ("Comcast"), Case No. 4:17-cv-00123-ALM ("the *Comcast* case"). All

other Plectrum suits were settled before the Court even held a Management Conference, and in some cases even before the defendant(s) filed a responsive pleading.  Not only that, but Plectrum's allegations against AT&T and Comcast are based in part on AT&T's and Comcast's alleged use of Fortinet products.  This case should be transferred to Northern California. That is the home of Fortinet, its product design division, and the vast majority of relevant witnesses and documents.

## II.   <u>STATEMENT OF FACTS</u>

### A.   **Fortinet**

Fortinet is a Delaware corporation with strong ties to the Northern District of California. Nelson Decl. ¶ 5.  Fortinet's principal place of business and headquarters are in Sunnyvale, California, which is in the Northern District of California.  *Id*.  Virtually all of Fortinet's United States employees devoted to engineering, finance, operations, manufacturing, and marketing work in the Northern District of California.  *Id.* ¶  6; *see also Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382, at *6 (E.D. Tex. Jan. 23, 2012) ("[N]early all of . . . Fortinet's . . . management and technical witnesses reside in the Northern District of California, where the compan[y] [is] headquartered.").  Virtually all of Fortinet's senior management is also in Sunnyvale.  *Id.* ¶ 8.  Indeed, decisions regarding design, marketing, sales, and pricing occur predominantly in Sunnyvale.  *Id*.

Numerous Fortinet employees with knowledge of the accused FortiGate and FortiSwitch products—including employees who designed, developed, commercialized, and marketed the accused products—work at Fortinet's Sunnyvale headquarters.  Such employees include:

- Jim Bray, who has knowledge regarding Fortinet's financial records, costs, profits, etc., related to Fortinet's products;

- John Maddison, Vice President, Products and Solution, who has knowledge regarding the lifecycles of Fortinet's products;

- James Allen, Director of Product Marketing, who has knowledge regarding the marketing of Fortinet's products;

- Joseph Mihelich, Vice President of Product Engineering, who is the product lead for all FortiSwitch products; and

- Michael Xie, Chief Technology Officer, who is the product lead for all FortiGate products.

*Id.* ¶ 10.

Indeed, the numbers speak for themselves: around 95% of Fortinet's United States employees who research, design, and develop products work in Sunnyvale, California and almost 99% of them work in California; similarly, about two-thirds of Fortinet's United States employees devoted to finance, operations, manufacturing, and marketing work in Sunnyvale, California and almost 90% of them work in California.  *Id.* ¶ 7.

Fortinet's hardware—running the accused FortiGate and FortiSwitch products—is manufactured by Fortinet's OEMs in China and Taiwan; however, even the specifications according to which the hardware is manufactured are designed by Fortinet's engineers in Sunnyvale, California.  *Id.* ¶ 11.  Moreover, any quality control testing for the accused FortiGate and FortiSwitch products destined for United States customers takes place in or near Sunnyvale, California, and any of the accused FortiGate and FortiSwitch products shipped in the United States are shipped from there.  *Id.* ¶  12.

In addition, the vast majority of documents that relate to the design, development, commercialization, and marketing of the accused FortiGate and FortiSwitch products, as well as the source code that provides the features Plectrum accuses of infringement, are also located in or near Sunnyvale, California within the Northern District of California.  *Id.* ¶ 13.  Additional documents are located in Vancouver, British Columbia, Canada, and thus closer to Northern District of California than to the Eastern District of Texas.  *Id.*

In contrast, **none** of the small pool of Fortinet employees in Texas is involved in the design and development of the accused FortiGate and FortiSwtich products, nor are there any relevant, non-redundant documents there.  *Id.* ¶ 14. In fact, the importance of Fortinet's California headquarters is unrivaled.  Fortinet's other  locations, and with the potential exception of Fortinet's Vancouver office, do not have documents or employee knowledge relevant to this case that are not also found in Fortinet's headquarters in California, but there are vast numbers of documents and employees with unique knowledge relevant to this case in Sunnyvale, California that are not found in any other Fortinet office.   *Id*. ¶ 15.

Finally, the inconvenience imposed upon Fortinet if it were forced to litigate this case in this District is underscored by the fact that Fortinet has never filed a lawsuit in the Eastern District of Texas.  *See id.* ¶  16.

### B.        Plectrum and Other Cases Filed by Plectrum

Plectrum is a patent assertion entity.  Its website does not identify any products or services for sale, nor provide any indication that it makes any use of the technologies it claims to own except through litigation and licensing.  Attorney Decl., Ex. A.  Its sole managing member is an attorney named Jon Rowan, *see* Attorney Decl., Ex. B, and Plectrum has the same office address and even phone number as Mr. Rowan's law firm.  *Compare* Attorney Decl., Ex. A *with* Attorney Decl., Ex. C.

Moreover, Plectrum's only assets appear to be a number of patents, including the patents asserted in this matter, and Plectrum's sole business appears to be the enforcement of those patents through the filing of lawsuits against operating companies, including Fortinet:

| Defendant(s) | Case Number | Date Filed |
|---|---|---|
| Extreme Networks Inc. | 4:17-cv-00079-ALM | February 2, 2017 |
| Cisco Sys., Inc. | 4:17-cv-00078-ALM | February 2, 2017 |

| Brocade Commc'n Sys., Inc. | 4:17-cv-00077-ALM | February 2, 2017 |
|---|---|---|
| Arista Networks, Inc. | 4:17-cv-00076-ALM | February 2, 2017 |
| Juniper Networks Inc. | 4:17-cv-00084-ALM | February 3, 2017 |
| Fortinet, Inc. | 4:17-cv-00082-ALM | February 3, 2017 |
| Facebook,  Inc. | 4:17-cv-00081-ALM | February 3, 2017 |
| Huawei Techs. USA Inc. *et al* | 4:17-cv-00083-ALM | February 3, 2017 |
| Verizon Commc'n, Inc.  *et al* | 4:17-cv-00126-ALM | February 20, 2017 |
| NEC Corp. of Am. *et al* | 4:17-cv-00125-ALM | February 20, 2017 |
| Comcast Corp.  *et al* | 4:17-cv-00123-ALM | February 20, 2017 |
| Broadcom Corp.  *et al* | 4:17-cv-00121-ALM | February 20, 2017 |
| AT&T Inc. *et al* | 4:17-cv-00120-ALM | February 20, 2017 |
| F5 Networks, Inc. | 4:17-cv-00124-ALM | February 20, 2017 |
| Oracle Corp. *et al*. | 4:17-cv-00141-ALM | February 24, 2017 |
| Nokia USA, Inc. *et al.* | 4:17-cv-00140-ALM | February 24, 2017 |

All of these cases are in their infancy, as the Court has not even held a Rule 16 management conference in any of them, much less issued any substantive orders, conducted claim construction, or otherwise gained any experience with the asserted patents.  Moreover, all cases except Plectrum's cases against Fortinet, Comcast, and AT&T have been dismissed. Attorney Decl. ¶ 8.  Comcast, however, moved the Court to stay its case, since Plectrum's allegations against Comcast are based in part on Comcast's use of products furnished by Fortinet.  *Comcast* case, Dkt. 45.  And AT&T similarly intends to move for a stay of its case. Attorney Decl. ¶ 9.

**C.**    **Third-Parties**

Plectrum asserts three patents against Fortinet:  U.S. Patent No. 5,978,951 ("the '951 patent"), U.S. Patent No. 6,205,149 ("the '149 patent"), and U.S. Patent No. 6,751,677 ("the '677 patent") (collectively, "the asserted patents").  According to the faces of the asserted patents, the named inventors of the '951 and '149 patents are located in Massachusetts, and the

named inventors of the '677 patent are located in California.  The original assignee of the applications that matured into the '951 and '149 patents was 3COM Corp. ("3COM"), and the original assignee of the application that matured into the '677 patent was Hewlett-Packard Co. ("HP").  Attorney Decl., Exs. D, E, F.  Since 3COM was (prior to its acquisition by HP) and HP still is based in the Northern District of California, documents related to the conception, reduction to practice, initial assignment, and early licensing efforts of the asserted patents are likely located in that District.

No known third-party witnesses reside in the Eastern District of Texas.

## III.    **THE RELEVANT STANDARDS**

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  The Fifth Circuit considers "private" and "public" factors in determining whether transfer under Section 1404(a) is warranted.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008).  The private factors are:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious and inexpensive."  *Id.* (citation omitted).  The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the application of foreign law."  *Id.*

"[A] moving party, in order to support its claims for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice."  *Id.* at 314 (internal quotation marks omitted).  The moving

party need not, however, show "that the transferee forum is *far* more convenient." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).  Indeed, the plaintiff's choice of forum is not a factor in this analysis. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009).

"In a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *Id.* at 1198.

## IV.   ARGUMENT

This case should be transferred to the Northern District of California because (i) it could have been brought in the Northern District of California; and (ii) all of the private and public factors weigh in favor of transfer or are neutral.

### A.   This Action Could Have Been Brought in the Northern District of California

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen*, 545 F.3d at 312.  Here, venue is proper in the Northern District of California because Fortinet sells the accused FortiGate and FortiSwitch products  (*i.e.,* alleged "acts of infringement") within that District and maintains its headquarters (*i.e.,* "a regular and established place of business") there.  *See* Nelson Decl. ¶¶ 5, 17; *see also* 28 U.S.C. § 1400(b).  According, this action might have been brought in the Northern District of California and may properly be transferred there.

### B.   The Private and Public Factors Weigh Heavily in Favor of Transfer to the Northern District of California

#### 1.   Relative Ease of Access to Sources of Proof

The "relative ease of access to sources of proof" remains a "meaningful factor" in the § 1404(a) analysis, notwithstanding modern technology and electronic storage of documents. *Volkswagen*, 545 F.3d at 316.  This factor "turn[s] upon which party . . . will most probably have

the greater volume of documents relevant to the litigation and their presumed location in relation

to the transferee and transferor venues." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,

No. 6:09-cv-390, 2010 WL 3855520, at*2 (E.D. Tex. Sept. 30, 2010) (citation omitted).  "In

patent infringement cases, . . . the place where the defendant's documents are kept weighs in

favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)

(internal quotation marks omitted).

Here, the bulk of evidence relevant to this case is physically located in the Northern

District of California.  The vast majority of documents relating to the design, development,

commercialization, and marketing of the accused FortiGate and FortiSwitch products are located

in Sunnyvale, California within that District.  *See supra* at 3.  So is Fortinet's source code, which

provides the features Plectrum alleges infringe the asserted patents.  *See id.*  Further, numerous

Fortinet employees with knowledge regarding the accused FortiGate and FortiSwitch products—

including the employees who designed, developed, commercialized, and marketed these

products—work at Fortinet's Sunnyvale headquarters.  *See supra* at 2-3.  Finally, most third

party sources of proof—such as any evidence kept by the named inventors of the '677 patent or

the original assignees of all three asserted patents—are also located in the Northern District of

California.  *See supra* at 5-6.

The sources of proof in the Eastern District of Texas are, by contrast, insignificant.

While Fortinet rents office space in Plano, Texas, the individuals working in that office were not

involved in the design and development of the accused FortiGate and FortiSwitch products, and

Fortinet, in fact, does not have any relevant, non-redundant sources of proof in this District.  *See*

*supra* at 4.  Although Plectrum purports to maintain an office in this district—which is shared

with Plectrum's sole employee's law firm—the ease of accessing any evidence at this office

8

cannot outweigh the ease of accessing Fortinet's substantial evidence in the Northern District of California.  *See supra* at 4-5; *see also Chrimar Sys. v. Juniper Networks, Inc.*, Nos. 6:15-cv-618 & -630, 2016 WL 126936, at *3 (E.D. Tex. Jan. 11, 2016) (finding that "this factor weighs in favor of transfer," even though the plaintiff maintains an office in the Eastern District of Texas, because "the Court must also acknowledge that 'the bulk of relevant evidence usually comes from the accused infringer'").

Other known third party sources of proof—including the named inventors of the '951 and '149 patents in Massachusetts and Fortinet's OEMs in China and Taiwan—are located a great distance from both the Northern District of California and the Eastern District of Texas, and the ease of accessing these sources of proof is neutral.  *See supra* at 3, 5-6.

Because the bulk of evidence relevant to this case will come from Fortinet's headquarters in the Northern District of California, as well the third party sources of proof in the same District, the "relative ease of access to sources of proof" factor weighs heavily in favor of transfer.  *See also Google*, 2017 WL 977038, at *3 (finding that where "the vast majority of [defendant's] employees—in particular those responsible for projects relating to the accused product—work and reside in the Northern District of California," "the evidence overwhelmingly supports a conclusion that this factor weighs strongly in [defendant's] favor").

### 2.    Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis."  *Genentech*, 566 F.3d at 1342 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  Requiring witnesses to travel to a remote district to attend trial imposes "not only . . . monetary costs, but also the personal costs associated with being away from work, family, and community."  *See Volkswagen*, 545 F.3d at 317.  "When a particular witness will be required to travel 'a significant distance no matter

9

where they testify,' then that witness is discounted for purposes of the [convenience] analysis. *On Semiconductor Corp.*, 2010 WL 3855520, at *5.

Again, the vast majority of likely witnesses with relevant knowledge reside in the Northern District of California.  Numerous Fortinet witnesses—including the specific individuals listed *supra* at 2-3—who designed, developed, commercialized, and marketed the accused FortiGate and FortiSwitch products, and thus have relevant and material knowledge regarding this product, are in the Northern District of California.  *See id*.  In addition, the named inventors of the '677 patent are also in the Northern District of California.  *See supra* at 5-6.

In contrast, there is only one known, potential witness with non-redundant knowledge in the Eastern District of Texas: Plectrum's sole managing member, Jon Rowan.  *See supra* at 4. But the convenience to a single Plectrum employee of keeping this case in this District is greatly outweighed by the inconvenience to the many material Fortinet employees and named inventors who will have to travel from the Northern District of California to the Eastern District of Texas. *See Chrimar*, 2016 WL 126936, at *4 (finding that this factor weighs in favor of transfer when a defendant identify more willing witnesses in the transferee district than a plaintiff identifies in the transferor district).

The remaining witnesses—including the named inventors of the '951 and '149 patents in Massachusetts and Fortinet's OEMs in China and Taiwan—would have to travel a significant distance whether this Case is transferred to the Northern District of California or remains in this District, and their convenience should, therefore, be accorded little, if any, weight.  *See supra* at 3, 5-6; *see also On Semiconductor Corp.*, 2010 WL 3855520, at *5.

Since Fortinet's and third party witnesses in and near the Northern District of California greatly outnumber Plectrum's lone witness in the Eastern District of Texas, the "convenience of

attendance for willing witnesses" factor weighs heavily in favor of transfer, too.

### 3.      Availability of Compulsory Process to Secure the Attendance of Witnesses Weighs in Favor of Transfer.

"Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses [than the transferor district]." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013).

The named inventors of the '677 patent and the original licensees of all three asserted patents are located in the Northern District of California.  *See supra* at 5-6.  In addition, "[e]x-employees (and, with the passage of time from now until trial, it is possible, if not probable, that some employees will become ex-employees) . . . [will] likely not move out-of-state and therefore [will] continue to be subject to the subpoena power in the Northern District of California . . . ." *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 602-03 (D. Del. 2012).  Here, Fortinet did a significant amount of work related to the accused FortiGate and FortiSwitch products in the Northern District of California.  *See supra* at 2-3.  Accordingly, "[i]t is foreseeable that a number of [Fortinet's] former officers and employees, many of whom likely reside in or near [the transferee district], may be called upon to testify."  *Kleiner v. Southwest Airlines Co.*, No. 5:08-cv-218, 2008 WL 4890590, at *4 (W.D. Tex. Nov. 4, 2008).  Accordingly, the subpoena power of the Northern District of California will be necessary to compel the attendance of the original assignees of the asserted patents, some of the named inventors, and any of Fortinet's former employees with relevant knowledge list residing in that District.

In contrast, there are no known third-party witnesses outside the absolute subpoena power of the Northern District of California, but within the absolute subpoena power of this Court.  Accordingly, the "availability of compulsory process" factor favors transfer.

**4.      Local Interest in Adjudicating Local Disputes Weighs in Favor of Transfer**

Local interest determination involves a comparison of the localized interest of the two forums.  *Lone Star Document Mgmt., LLC v. Catalyst Repository Sys., Inc.*, No. 6:12-cv-164, 2013 WL 5496816, at *6 (E.D. Tex. Mar. 15, 2013) (finding that this factor "favors transfer" where the transferee district has "a greater local interest in this case").  Here, the Northern District of California has a much stronger and more particularized interest in deciding this Case.

The Northern District of California is Fortinet's home.   Fortinet maintains its headquarters in Sunnyvale, California, employs a large workforce there, and designed and developed the accused FortiGate and FortiSwitch products there.  *See supra* at 2-4.   The Northern District of California, therefore, has a strong localized interest in deciding this Case. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364, -365, -577, & -578, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding local interest factor weighs in favor of transfer when defendants are headquartered, develop the accused products, and employ a large number of people in the transferee venue); *Network Protection Sciences*, 2012 WL 194382, at *7 (concluding that "the residents of the Northern District of California have a particularized interest in the subject matter of this lawsuit" because, *inter alia*, Fortinet is "headquartered there," "developed the allegedly infringing products in the Northern District of California," and employs a large number of people "residing in California").

On the other hand, the Eastern District of Texas has relatively little localized interest in deciding this case.  Because the accused FortiGate and FortiSwitch products are available for purchase throughout the United States (Nelson Decl. ¶ 17), the "citizens of [the Eastern District of Texas] do not have a particularized interest in deciding the dispute simply based on product sales within the venue."  *See Blue Spike, LLC v. Texas Instruments, Inc.*, Nos. 6:12-cv-499 & -

558, 2014 WL 1374045, at *5 (E.D. Tex. March 13, 2014).  And none of Fortinet's employees that work in the Eastern District of Texas have been involved in the design and development of the accused FortiGate and FortiSwitch products.  Nelson Decl. ¶ 14.

The only possible localized connection this case has with the Eastern District of Texas is the location of Plectrum's purported office in Tyler, Texas.  Even if this connection were afforded any weight at all, Fortinet's specific identification of "individuals [in the Northern District of California] whose work and reputation are being called into question by allegations of infringement" outweighs any local interest stemming from Plectrum's office in the Eastern District of Texas.  *See Chrimar*, 2016 WL 126936, at *6; *see also Google*, 2017 WL 977038, at *3 n.3 ("Given the relative strength of [defendant's] ties to the Northern District of California juxtaposed with [plaintiff's] ties to the Eastern District of Texas, it would appear that this factor weighs in [defendant's] favor as well. ").

### 5.  Other Practical Factors, such as Judicial Economy, Are Neutral

"[J]udicial economy is just one relevant consideration in determining how administration of the court system would best be served in deciding a transfer motion."  *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014).  "The proper administration of justice may be to transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation."  *Id.* (internal quotation marks omitted).

While Plectrum filed sixteen lawsuits in this District, only this case and the *Comcast* and *AT&T* cases are still actively litigated—the rest have been dismissed.  Attorney Decl. ¶ 8.  None of the other cases even got as far as a Rule 16 management conference, much less claim construction or any other events that would have led to the Court gaining any experience with the asserted patents.  *See Evolutionary Intelligence, LLC v. Apple, Inc.*, No. 6:12-cv-783, 2013 WL 8360309, at *8 (E.D. Tex. Aug. 27, 2013) (finding that "the Court is not yet familiar with the

13

Asserted Patents" because "all of the . . . cases are still in their infancy" and "[t]he combined claim construction hearing is still nine months away").

Moreover, Comcast moved the Court to stay its case under the customer suit exception, and AT&T intends to do the same.  Attorney Decl. ¶ 9; *see also In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) ("Since Nintendo's liability is predicate to recovery from any of the defendants, the case against Nintendo must proceed first, in any forum.").  In its Response and Sur-Reply to Comcast's motion, Plectrum argued that *Nintendo* does not apply based on (1) an unrealistic hypothetical that manufacturers might not be found to "directly infringe the asserted method claims because they do not practice those methods as part of their normal businesses"; (2) the need to separately adjudicate damages against Comcast; and (3) an irrelevant distinction that prior cases applying the customer suit exception were pending in different districts.  *See Comcast* case, Dkt. 28, at 6; Dkt. 34, at 1.  All three of these arguments are unavailing.  First, Fortinet readily admits that it tests the accused FortiGate and FortiSwitch products within the United States; accordingly, Plectrum's hypothetical is inapplicable. *See* Nelson Decl. ¶ 12. Second, the damages attributable to a customer and manufacturer were different in *Nintendo*, too, yet the Federal Circuit found that the district court abused its discretion by refusing to transfer the case against Nintendo to another district and stay the cases against the retailers.  *See* 756 F.3d at 1365-66.  And third, aside from being contrary to *Nintendo*, Plectrum's argument that the customer suit exception does not apply if all cases are pending in the same district presents the Catch-22 the Federal Circuit warned against in *Google*: it asks the Court to deny AT&T and Comcast's motions to stay because the *Fortinet* case is pending in the Eastern District of Texas, and to deny Fortinet's motion to transfer because the *AT&T* and *Comcast* cases are not stayed.  *See also Google*, 2017 WL 977038, at *3 ("[W]e observe that it is

improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district.").

Instead, the correct outcome is to transfer Plectrum's case against Fortinet to the Northern District of California and to stay its cases against AT&T and Comcast.  Under these circumstances, no judicial economy is lost, and this factor is, therefore, neutral.  But, even if it were not, because Fortinet "has shown [that] the Northern District of California is a clearly more convenient forum, the considerations of judicial economy . . . do not override that showing to warrant a denial of transfer."  *See Chrimar*, 2016 WL 126936, at *6; *see also Blue Spike, LLC v. Texas Instruments, Inc.*, Nos. 6:12-cv-499 & 6:13-cv-86, 2014 WL 137405, at *5 (E.D. Tex. Mar. 13, 2014) ("The one factor that slightly weighs against transfer does so only because Plaintiff serially filed dozens of cases in this district and, therefore, is of limited importance.").

### 6.    Remaining Public Interest Factors

Both the Eastern District of Texas and the Northern District of California have about equal court congestion, both are familiar with the law that will govern this case, and this case raises no issues of conflicts of law or the application of foreign law.  *See TracBeam, LLC v. Apple, Inc.*, No. 6:14-cv-680, 2015 WL 5786449, at *7 (E.D. Tex. 2015).  Even if the Court decides to give some weight to statistics showing time to trial in the Eastern District of Texas being slightly faster (by a few months) than in the Northern District of California, this factor is "the most speculative, and cannot alone outweigh other factors."  *See U.S. Ethernet Innovations, LLC v. Samsung Electronics Co., Ltd.*, No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613, at *5 (E.D. Tex. Apr. 2, 2013) (finding this factor neutral "due to its speculative nature").

Accordingly, the remaining public interest favors are neutral.

V.      **CONCLUSION**

For the foregoing reasons, Fortinet respectfully requests transfer of this action to the

Northern District of California, pursuant to 28 U.S.C. § 1404(a).

DATED:  June 29, 2017                    Respectfully submitted,
                                         */s/ John M. Neukom*
                                         _____
                                         John M. Neukom
                                         California State Bar No. 275887
                                         (Admitted in E.D. Tex.)
                                         johnneukom@quinnemanuel.com
                                         QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
                                         50 California Street, 22nd Floor
                                         San Francisco, CA 94111
                                         Tel: (415) 875-6600
                                         Fax: (415) 875-6700

                                         *Attorneys for Defendant Fortinet, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 29th day of June, 2017.

/s/ John M. Neukom
John M. Neukom

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendant has conferred with Plaintiff's counsel, Zachariah S. Harrington,  about the subject matter of this motion on and after June 26, 2017 and that the parties were unable to resolve the dispute.  Thus, the matter is ripe for the Court's determination.

/s/ Ognjen Zivojnovic
Ognjen Zivojnovic